MADISON COUNTY, IOWA, Appellee, v. THE CITY OF WINTERSET, Appellant.

Municipal corporations:   STREET   IMPROVEMENT:   ASSESSMENT   OF
1   COUNTY PROPERTY.   Both the area rule and the front foot rule may be considered in assessing the benefits to a county from paving streets around its court house square, but neither rule is conclusive; as the ultimate question is one of benefits to all of the property adjacent to the streets improved and numerous matters enter into an equitable apportionment.

**Same:** INTEREST. The allowance of interest on an assessment for a public improvement after its maturity, the same as on ordinary taxes, is proper.

*Appeal from Madison District Court.*—HON. W. H. FAHEY, Judge.

THURSDAY, FEBRUARY 19, 1914.

THIS is a controversy over the amount to be taxed as a paving assessment against property belonging to Madison county, used and operated as a courthouse. The county appealed to the district court from the assessment made by the city council, and the district court reduced the assessment from $12,599.73 to $8,908.29, and the city appealed to this court. The plaintiff also filed a cross-appeal, but the city will be called the "appellant."—*Affirmed.*

*W. O. Lucas,* City Atty., and *J. P. Steele,* for appellant.

*Sam C. Smith,* County Attorney, and *W. S. Cooper,* for appellee.

DEEMER, J.—In the year 1911 the city council of defendant city caused the streets surrounding what is known as the courthouse square in that city, which square is in the center of the business district; and a street known as North First avenue, running from the square to the railway depot, to be paved, and also a part of the streets to be curbed and guttered. Prior to the making of the improvement, the plaintiff county had constructed and maintained a gutter on the outer edge of the square on its four sides, and installed posts and hitch racks immediately outside the gutter. When the improvement in question was put in, this gutter was joined by a brick pavement, and for the first nine feet outside the hitch racks brick was laid upon a concrete base.

The paving on the south side of the square is seventy feet

in width, and on the other three sides is fifty-four feet. The four half blocks abutting on the streets surrounding the courthouse, which constitute the principal business section, are divided into forty-eight lots, each twenty-two feet in width, the average value of which, according to the finding of the trial court, was $8,000. Around the square and on the business side of the streets are cement sidewalks twelve feet in width. As a part of the improvement, a curb was built on the business side of the streets; but none was constructed around the courthouse square. The county, however, at its own expense, filled in a space about six inches wide on its side of the street, with concrete to connect the gutter theretofore built by it, which was about four feet wide, with the paving done by the city, and the paving was so constructed as to carry the water falling thereon into the gutter constructed by the county. And it also appears that, before the pavement was laid, the courthouse block was square, but, in order to make the corners rounding in shape, the county vacated some of the ground, and also paid the expense of paving the vacated part of the old square. All the lots surrounding the square are improved with business houses of greater or less value, as is usually the case in our county seat towns. The lots vary in depth from one hundred and thirty-two feet on the north and south sides of the square to one hundred and twenty to one hundred and twenty-two on the east, and one hundred and sixteen on the west.

The cost of the curbing, paving, and guttering around the square, not counting the items already mentioned as paid by the county, was $20,752.95, and the final assessment against the county, from which this appeal was taken, was $8,908.29, with interest from the date of original assessment. Both parties appeal.

The testimony taken before the district court as to the proper assessment to be made, consisting largely of opinions, was, as might well be expected, conflicting and contradictory; witnesses living in the city fixing the value of the county

property and the benefits thereto very high, and those residing in the country naturally depreciating that value, and also minimizing the benefits derived from the improvement. The trial court, after hearing it all, came to the following conclusion:

The determination of the value of benefits to plaintiff's property is rendered more difficult by reason of the fact that the same has no market value, and by the terms of the dedication cannot be sold and conveyed, and, in fact, could not be converted to other uses that would be inconsistent with the terms of the dedication. However, said property is liable to special assessment for such improvements.

The assessment of benefits made by the city council has a presumption of being correct, and should not lightly be set aside by the court, but, on the other hand, presumption should not be allowed to overcome the evidence, and, where it appears that the assessment as made is not equitable or fair, it then becomes the duty of the court to make such an assessment as should have been made by the council in the first instance. This proposition is elementary, and, I presume, would be in no manner questioned, and, with this proposition in mind, coming now to consider the question of assessment made by the city council, it is difficult, if not wholly impossible, to believe that the assessment as made is equitable and in accordance with the benefits conferred. This seems to me manifest, when plaintiff's property contains only about one-half of the area of the other property abutting on this improvement, and only an equal amount of frontage on this improvement, and the assessment as made on plaintiff's property is about three-fifths of the total cost.

That one property may be assessed higher than another is no doubt true, but, when this is done, some reason therefor must exist, and, if any reason exists for the greater assessment upon plaintiff's property, it has not been shown upon the trial of this case. Special assessments for street improvements shall be in proportion to the benefits conferred, and not in excess thereof.

Both the front-foot rule and the area rule have the approval of our Supreme Court. That neither of these rules was adopted in making this assessment fully appears from the testimony of the witness Hiatt, who was the engineer in charge

of the construction of the improvement, and assisted in making this assessment.

Both plaintiff and defendant have offered the evidence of various witnesses as to the amount of benefits conferred upon both plaintiff's and defendant's property. The evidence was largely in the nature of opinion based upon different theories, and, while the court is acquainted with the most of the witnesses and has the utmost confidence in their veracity, yet the fact remains that, because the evidence being largely in the nature of their opinions in determining the question at issue, their evidence is not of sufficient weight and would hardly afford a safe guide for the court. This is more especially true of defendant's witnesses, all, or nearly all, of whom assume in their evidence that it was plaintiff's duty to provide a good and proper street surrounding their property for the benefit of all the people of the county, and likewise their duty to maintain hitch racks for the people of the county to use. This and other matters of like character were the bases of their opinions. That it is the duty of the plaintiff to aid in maintaining the streets surrounding their property right be conceded; but this does not arise because it is the county, but because they are the owners of the property. It may also be conceded that the plaintiff has the right to provide hitching racks for the use of the people, but it might not follow that, because it does do this, it is not their duty to improve the streets. It is a fact that the court might take judicial notice of that the counties, as well as the cities, states, and even the nation itself build large beautiful buildings, not alone for their use, but for their beauty, and in which the people take a just pride. That the people of this county take a pride in their courthouse and its yard is, no doubt, true, and anything that materially adds to its use and appearance should properly be considered as benefit and as adding to its value. And that the improvement in question adds to the use and enjoyment of plaintiff's property, as well as adding to its general appearance, is abundantly established in fact. In justice to the plaintiff, it ought to be said that it does not claim that it did not receive the proportionate share of the benefits assessed to them, and I think it must be fairly said that, under the circumstances, they must be sustained in this proposition. 'A property owner is entitled to have the cost of the improvement ratably and proportionately distributed over all the property in the assessment district.'

After fully considering all of the evidence offered herein, and considering the circumstances surrounding plaintiff's property and the other property in the zone of this improvement, I have reached the conclusion that a more equitable assessment may be reached by assessing the cost of the improvement by a combination of both the front-foot rule and the area rule in equal proportions; that is, one-half by each rule, and by this plan the one-half assessed according to front-foot rule would make plaintiff's share of that half $5,188.24; and the one-half assessed according to area rule would make plaintiff's share of that half $3,720.05; or a total of $8,908.29. I am satisfied that under all the circumstances that this rule is as near fair and equitable as can be adopted, and that plaintiff's property is fairly benefited in this amount, and that it is its proportionate share of the cost of the improvement.

In this connection, it should be stated that, while the court below may not have adopted a proper rule for fixing the assessment, yet it is true that both the area and the front-foot rule may be considered in arriving at the proper assessment to be made; but neither is conclusive; as, after all, the question is one of benefits, and there are many matters which must be taken into account. The benefits arising out of the expense must, of course, be properly apportioned, and it would be inequitable to assume that the county received all, and the property owners none. Every business lot on this square received a benefit—some more perhaps than others—and yet either a front-foot or an area rule might have been applied to them. But, in the circumstances shown, it would, as we think, be inequitable to say, as a matter of law, that, although both in area and in front footage the county does not own half the property, yet it should be assessed with one-half or any other arbitrary sum, no matter what the value of the improvements to the business lots.

1. MUNICIPAL CORPORATIONS: street improvement: assessment of county property.

Of course the courthouse square is paved on all sides, and any one may now approach from any angle or side of the square. This is something of an advantage over private

property which cannot be so reached, and yet, on the other hand, every piece of business property around the square may now be reached, after one gets upon the pavement, from any other part of the square. Of course, the county has a monopoly in its business, and often a man having business to transact with it must go to the courthouse. But, aside from residents of the town, who would naturally trade with local merchants, those coming from a distance are not only afforded every access to the courthouse, but also to hotels, restaurants, and other places where they may be induced to trade (without getting in the mud), and the business man also gets the benefit —not so much, of course, as the county, but in the aggregate a considerable sum.

Moreover, the property is public. It is not kept for private profit or gain, and the county actually gains nothing in dollars and cents from the pavement. Each member of the political body may have some gain in the way of private convenience, and perhaps in other ways, as the saving of shoe leather, clothing, etc. After all is said, it is perfectly manifest that these assessments must, of necessity, be only an approximation. The witnesses were before the trial court. The trial judge knew the exact situation, and, on the record as we have it, we do not feel justified in disturbing the final assessment made by him against the county on either appeal. As neither party is satisfied, we may well assume that the result is as nearly correct as we could hope to make it, were we without an opinion from the trial court. Enough was allowed because of special convenience to the county property, over and above the area and front-foot rule, as it seems to us, to fairly equalize the matter.

There was no error in the allowance of interest. Code, section 825. *Lightner v. Board of Supervisors,* 156 Iowa, 398.

2. SAME : interest.

The judgment seems to be as nearly correct as we could hope to make it, and it is therefore *Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concurring.